# Birmingham National Bank v. Mayer.

## *Garnishment Suit.*

1. *Garnishment suit; joinder in issue by garnishee a waiver of irregularities in the preliminary proceedings.*—Where, in a garnishment suit, after an affidavit is made contesting, in behalf of the plaintiff, the answer of the garnishee, the attorney for the plaintiff states on the hearing, that at the time of the service of the garnishment, and at the time the answer was made, the garnishee had money belonging to the defendant, and the attorney for the garnishee thereupon states, that the garnishee did not, at the time of the service of said garnishment and at the time of making said answer, have money belonging to the defendant, there is an issue tendered by the plaintiff and accepted and joined in by the garnishee; and this is a waiver by the garnishee of irregularities in respect of the time when the affidavit of contest was filed, as to the insufficiencies of that affidavit, and as to all other preliminary proceedings; and motions made thereafter for the dismissal of the contest upon the ground of such irregularities come too late, and should be overruled.

2. *Same; liability of bank.*—Where a writ of garnishment is served upon a bank and the answer of the garnishee discloses that the defendant had made a general deposit of moneys in its bank, the garnishee can not avoid liability on the ground that the plaintiff had not demanded payment before the issuance of the garnishment, and it is no defense for the garnishee that the defendant had not drawn a check for the amount of his deposit and had the same dishonored; since, by the general deposit by the defendant the bank became a debtor to him of the amount of such deposit, whether the demand had been made for the payment of said debt or not, and such debt may be reached by garnishment.

3. *Same; same; voluntary liquidation of garnishee no defense.*—Where a writ of garnishment is served upon a national bank, and the answer of the garnishee discloses that the defendant had made with it a general deposit of money, the fact that the garnishee corporation had gone into voluntary liquidation, and that the defendant would not be entitled to collect the full amount of his deposit, will not avail the garnishee to avoid liability under its answer; since the plaintiff would

[Birmingham National Bank v. Mayer.]

be entitled to judgment for the amount which the garnishee owed the defendant, even though he could only share ratably in the assets of the bank in collecting said judgment.

4. *Same; same; application of deposit.*—When a bank, on being garnished, answers that the defendant had made with it a general deposit of money, but it is claimed by the garnishee that it had, before the service of the writ of garnishment, paid its indebtedness to the defendant by giving him credit for the amount of the deposit on a note he owed the bank, and it is shown by the evidence that at the time of such application of the deposit the note was not due, and there had been no direction to make such payment, or ratification thereof, by the depositor, the bank was without power or authority to thus appropriate the defendant's deposit; and a judgment against the garnishee for the amount of said deposit is proper

5. *Judgment against garnishee; recital of judgment against defendant; amendment after appeal.*—A final judgment against a garnishee must recite the fact and amount of the judgment against the original defendant; but, on appeal by a garnishee from a judgment against him, which does not recite the rendition of the judgment and the amount thereof against the defendant, the judgment against the garnishee may be amended *nunc pro tunc* by the trial court, so as to contain such necessary recitals; and upon the amended judgment being properly certified to the appellate court, the cause will be considered as if the judgment originally entered was free from such infirmity.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The proceedings in this case were had upon the contest of the answer by the Birmingham National Bank as garnishee in a suit by the appellee, S. C. Mayer, against one J. Galatoire.

On the 18th day of May, 1892, S. C. Mayer commenced suit against one John Galatoire in the circuit court of Jefferson county, Alabama, and, making affidavit and giving bond, sued out a writ of garnishment, which was served, on that day, on the Birmingham National Bank. On the 19th of May, 1892, the Birmingham National Bank filed a written answer in said case, denying any indebtedness to the said Galatoire. On June 21st, 1892, an affidavit was filed in said case by Morris Loveman, attorney for plaintiff. In this affidavit the said attorney deposed, ''that in his belief, the answer of W. A. Porter, cashier of the Birmingham National Bank, garnishee in case of S. C. Mayer against John Galatoire, is untrue. Affiant is informed and believes that said garnishee has in its possession or under its control about $123, the money of defendant.''

On the 21st day of June, 1892, it appears that the clerk of said court issued a notice of said contest, which, it further appears from the transcript, the sheriff "executed by serving a copy of the within writ of garnishment on the within named W. A. Porter, Cash. B'ham Nat. Bank. On this 21st day of June, 1892." On the 29th day of October, 1892, a notice to garnishee of contest was issued by the clerk of said court. On the 29th day of October, 1892, the sheriff made this return: "Executed by serving a copy of the within writ of garnishment on the within named W. A. Porter, Late Cash'r B'ham Nat. Bank."

On the 15th of November, 1893, the bill of exceptions shows that the following proceedings were had: "The attorney for the plaintiff stated that the said garnishee, at the time of the service of said garnishment and at the time of the answer of same, had money belonging to the defendant amounting to $113.50." And the attorney for the garnishee then stated that "Said garnishee did not have, at the time of the service of said garnishment, or at the time of making said answer, $113.50 belonging to the defendant." Thereupon the garnishee moved to dismiss said contest, (1), because no issue was tendered, as provided by the statute, at the term of the court at which said contest was instituted; and, (2), because the affidavit made did not state that the answer of the Birmingham National Bank, garnishee, was untrue or believed to be untrue. The court overruled the motion, to which ruling the garnishee then and there excepted. Thereupon the garnishee further moved to quash said contest proceedings because the same was not instituted, as prescribed by law, at the term at which said answer was made. The court overruled this motion, and the garnishee then and there excepted.

The plaintiff introduced W. A. Porter as a witness, who testified that he was cashier of the Birmingham National Bank; that J. Galatoire had, on May 5th, 1892, the sum of $113.50 on deposit in the Birmingham National Bank; that said Galatoire, at that time and at the time of the answer, owed the Birmingham National Bank $500, evidenced by a negotiable note maturing May 22d, 1892. The plaintiff then introduced said note in evidence, with endorsements thereon. Said Porter further testified that on May 5th, 1892, the said sum of $113.50, which was on

deposit in said bank in the name of J. Galatoire, was, by instruction of the president of the bank, held back on account of said Galatoire's indebtedness to the bank as above stated; and that on May 18, 1892, he entered a credit of said amount on the back of Galatoire's note. Plaintiff then introduced in evidence the writ of garnishment showing service of garnishment on the Birmingham National Bank on the 18th of May, 1892, and the affidavit of contest; also the judgment entry in the case of S. C. Mayer against John Galatoire.

The garnishee introduced Gen. R. D. Johnston as a witness, and he testified that he was president of the Birmingham National Bank in May and June, 1892; that said Birmingham National Bank had gone into voluntary liquidation prior to the 1st of May, 1892, as provided under the national banking laws of the United States. Said Johnston further testified, that the commercial agency of R. G. Dun & Co. communicated to him, as president of the Birmingham National Bank, on May 5th, 1892, that J. Galatoire, of Birmingham, Ala., had sold out, leaving debts unpaid, and that creditors should look after their interests without delay, bearing date of May 5th, 1892. The said Johnston further testified that he knew of claims being in attorneys' hands against said Galatoire at that time; that on the 5th of May, 1892, he instructed the cashier of said bank to hold said money on deposit on account of what said Galatoire owed said bank.

These following facts were admitted in open court: That the Birmingham National Bank, on or about May 5th, 1892, offered said Galatoire, if he would pay his note maturing as set forth above, that he would be allowed a discount of ten per cent of same; also if he would pay a debt of about $400 owing to Mountjoy & Tomlinson, maturing May 5th, 1892, that they would allow him a discount of twenty-five per cent on said indebtedness, which said offers were not accepted by said Galatoire. It was also admitted that said garnishee had recovered judgment against said Galatoire on said note, less the credit appearing on same, said judgment having been recovered on the 17th of April, 1893, in a suit brought in September, 1892. The plaintiff introduced defendant, J. Galatoire, as a witness, who testified, in substance, that on May 5th, 1892, he owed about $4,000, and had property

estimated to be worth about $3,000 ; that the debts owing, however, were not matured at that time ; that the holding back of said money by said bank and the appropriation by them of said amount on his note was done without authority from him ; that he had never paid said note he owed the Birmingham National Bank, upon which they obtained a judgment ; and that he never paid the judgment.

The cause was tried by the court without the intervention of a jury, and, upon the hearing of all the evidence, the court rendered judgment against the garnishee in favor of the plaintiff in the sum of $126. The garnishee prosecutes the present appeal, and assigns as error the rulings of the court to which exceptions were reserved, and the rendition of judgment against it in favor of the plaintiff.

MOUNTJOY & TOMLINSON, for appellant.—1. Galatoire being insolvent, the Birmingham National Bank had a right to appropriate his deposit on his unmatured note ; especially as he acquiesced in it.—1 Morse on Banks & Banking, 564; Bowles on Banks & Banking, 6, 395; *Ford v. Thornton* 3 Leigh. 695; *Kentucky Flour Co. v. Mer. Nat. Bank,* 13 S. W. Rep. 910.

2. The Birmingham National Bank, having gone into voluntary liquidation, under the national banking laws, it became its duty to "proceed to the collection and reduction to money of the assets of the bank, and the payment of creditors, equally and ratably, so far as the assets proved sufficient."—*Richmond v. Irons,* 121 U. S. 60; 2 Morse on Banks & Banking, (3d Ed.), §§ 42, 43; National Banking Act, § 5221.

3. A depositor can not recover in indebitatus assumpsit for deposit, until he has made formal demand on the bank for such deposit. The bringing of an action does not amount to a demand in such cases.—1 Morse on Banks & Banking, § 289; *Chemical Nat. Bank v. Bailey,* 12 Blatch. 480; *Payne v. Gardiner,* 29 N. Y. 146; *Teague v. LeGrand,* 85 Ala. 493. A debt or liability due from the garnishee to the defendant in an action can not be reached or subjected to process of garnishment unless the defendant can recover it by action of debt or in *indebitatus assumpsit*.— *Teague v. LeGrand,* 85 Ala. 493.

4. The issue must be made up in writing at the term

at which the contest is instituted.—Code of Alabama, §. 2981.

5. The judgment rendered against the garnishee is defective and erroneous in that it fails to recite the fact. and amount of a judgment against the defendant.—*Brake v. Curd Sinton Mfg. Co.*, 102 Ala. 339 ; *Chambers v. Yarnell*, 37 Ala. 400 ; *Faulks v. Heard*, 31 Ala. 516; *Gunn v. Howell*, 27 Ala. 676 ; *Whorley v. R. R. Co.*, 72 Ala. 20.

MORRIS LOVEMAN, *contra.*—1. The bank has no right to set off against a deposit, made with it by an insolvent debtor, a debt which was not at the time due.—*Oatman v. Bank*, 77 Wis. 501 ; *Hayden v. Alton Nat. Bank*, 29 Ill. App. 458.

2. In Alabama only legal debts, as distinguished from claims of an equitable nature, are available as set-off. *Loften v. Shackelford*, 17 Ala. 455 ; *Self v. Kirkland*, 24. Ala. 275 ; *Goldthwaite v. Bank*, 67 Ala. 549. Garnishment is purely statutory and is a legal remedy, and equitable set-off is not allowed.—*Loften v. Shackelford*, 17 Ala. 455.

3. In order for a garnishee to set-off claim against judgment debtors, the garnishee's claim must be due. Drake on Attachment, (7th Ed.), 685 *et seq.*

McCLELLAN, J.—The statute does not in terms require that upon the contest of the answer of a garnishee an issue shall be made up *in writing*, but only that an issue shall be made up under the direction of the court, (Code, § 2981) ; but conceding that writing is necessary when not waived, there is no doubt, we think, that the making up of an issue orally in open court is the waiver of writing. In this case an affidavit was made by Loveman contesting in behalf of the plaintiff the answer of the Birmingham National Bank, garnishee, and thereupon "the attorney for the plaintiff stated that the said garnishee, at the time of service of said garnishment, and at the time the answer was made, had money belonging to the defendant amounting to $113.50. The attorney for the garnishee then stated that the said garnishee did not have at the time of the service of said garnishment, or at the time of making said answer, $113.50 belonging to the defendant." Thus an issue was tendered by plaintiff and accepted and joined in by the garnishee. This was a waiver by the garnishee of the

several irregularities in respect of the time when the affidavit of contest was filed, the insufficiencies of that affiidavit, &c., alleged in the motions made by the garnishee after the issue was thus made up; and the court did not err in denying those motions, even if it be conceded that they were abstractly meritorious, upon which, however, we express no opinion.

2. A creditor has no right to demand payment of his claim from his debtor's debtor except by garnishment; and to hold that garnishment will not lie until the plaintiff has demanded of the party he intends to garnish payment of the debt the latter owes the defendant would be absurd. The case of *Teague, Barnett & Co. v. LeGrand*, 85 Ala. 493, proceeds on the theory that there is in cases like that, no debt until a call for payment has been made, and has no bearing here, where confessedly the relation of debtor and creditor existed between the garnishee and the defendant without any call or demand for payment being made by the defendant on the garnishee. It may be that upon general deposit, the depositor should make demand for payment before bringing suit against the bank, but the bank owes him a debt measured by the deposit as well before as after demand; and this debt may be reached by garnishment upon the very words of the statute. It was no defense for the garnishee here that the defendant had not drawn a check for the amount of his deposit and had the same dishonored.

3. The fact that the garnishee corporation had gone into voluntary liquidation and the concession that the defendant was not entitled to collect the full amount of his deposit, but only to share ratably in the assets of the bank, will not avail the garnishee. The plaintiff, notwithstanding all this, was entitled to judgment for the amount which the garnishee owed the defendant, and upon this judgment, if it be true that creditors without liens at the time the bank went into liquidation were entitled to share ratably only in the assets, the plaintiff would receive only a share proportionate to the relative amount of their claim thus evidenced against the bank.

4. There is no question of set-off in this case; it is beyond the issue made up. The garnishee did not claim that the defendant was indebted to it and offer to set off that debt against the defendant's claim advanced by and

in behalf of the plaintiff; but the position of the bank was that *it had paid* the defendant's claim by giving him credit for the amount of it on a note he owed the bank, before the garnishment was levied. This note was not due at the time the alleged appropriation of the defendant's deposit to its payment *pro tanto* was made, nor was it due when the writ of garnishment was served on the bank. It is well settled, at least at law, that a bank has no power or authority to thus appropriate the amount it owes a depositor to an unmatured debt the depositor owes it, and this though the depositor be insolvent. Of course such appropriation may be made upon the depositor's direction, or, being made without his consent, he may ratify it, provided the rights of third persons have not intervened, and ratification may be inferred from acquiesence in the appropriation after coming to a knowlege of it. But there is no evidence here of direction, direct ratification, or ratification by acquiescence. The attempted appropriation and payment were entirely abortive. The bank on the evidence in this record was indebted to the defendant when the writ of garnishment was served upon it; and the trial court did not err in rendering judgment against the garnishee.

5. The judgment as rendered against the garnishee and as certified here on this appeal did not recite the rendition of a judgment, the amount thereof, &c. against the defendant. This was error which, if uncorrected, would operate a reversal by this court. After the appeal was taken, however, the judgment against the garnishee was amended *nunc pro tunc* in the circuit court so as that it now contains the necessary recitals, and the amended judgment has been certified to us as upon an agreed *certiorari*. This amendment was well made, in our opinion even after the lower court had lost control of the cause by appeal, as such amendments may well be made after the trial court has lost control by the termination of the term by which the defective judgment was entered; and the case stands before us now as if the judgment originally written up had been free from this infirmity, and must be affirmed.

Affirmed.